UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT CHILDRESS,<br><br>Defendant. | Case No.: 3:16-cr-2556-GPC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SET BOND CONDITIONS**<br><br>**[ECF Nos. 71, 79]** |
|---|---|

Defendant Robert Childress moves for review of a detention order under 18 U.S.C. § 3145(b) and for the Court to set bond conditions. Def. Mots., ECF Nos. 71, 79. The United States has opposed. Gov't Opp., ECF Nos. 72, 80. Hearings were held on December 1, 6, and 13, 2017. Upon consideration of the moving papers, responsive pleadings, affidavit in support of complaint, papers, applicable law, evidence offered at the December 13, 2017 hearing and argument of counsel, and for the reasons set forth below, the Court hereby **DENIES** the motions.

**A. Procedural History**

Defendant Robert Childress was arrested on October 4, 2016, and charged in a complaint with committing bank fraud in violation of 18 U.S.C. § 1344. ECF No. 1. On October 5, 2016, at Childress's appearance, Magistrate Judge Louisa S. Porter set a bond for Childress of $100,000 personal surety, secured by trust deed. ECF No. 5. On

November 3, 2016, Childress was arraigned before Magistrate Judge Jan M. Adler on eight counts of wire fraud in violation of 18 U.S.C. § 1343. ECF Nos. 22, 23. On December 13, 2016, Judge Adler modified Childress's conditions of release to a $30,000 personal surety bond, secured by Childress's signature, and $5,000 cash. ECF Nos. 33, 34. In granting conditions of bail, Magistrate Judge Adler's order included conditions of release directing that Childress (1) not commit a federal, state or local crime during the period of release; (2) not contact D.G. – the victim of his fraud scheme – or her parents in any way; (3) not open any lines of credit without the prior approval of Pretrial Services; and (4) not "make any efforts to convince others to open lines of credit on his behalf." ECF No. 34.

On March 8, 2017, a grand jury returned a nine-count Superseding Indictment alleging wire fraud violations in an alleged scheme to defraud lenders. ECF No. 41. Thereafter, on June 21, 2017, a grand jury returned a ten-count Second Superseding Indictment which added a bank fraud count based upon Childress's conduct that allegedly occurred between January and March 2017. ECF No. 54. Childress was rearrested on June 27, 2017, and later pleaded not guilty to all charges listed in the Second Superseding Indictment. ECF No. 60.

The day after Childress was arrested, Pretrial Services filed a Petition for Warrant for Defendant on Pretrial Release alleging that Childress failed to comply with his conditions of release. ECF No. 59. First, the Petition alleged that Childress, by engaging in the new conduct alleged in the Second Superseding Indictment, violated the condition that he not commit a federal crime during the period of release. *Id.* at 2. Second, the Petition alleged that Childress contacted D.G.'s father. *Id.* at 3. According to the Petition, D.G.'s father saw Childress parked in a vehicle across the street from the father's residence, and, apparently the same day, Childress engaged in conversation with D.G.'s father. *Id.* D.G. reported the incident to the San Diego Police Department, noting that "she is afraid of [Childress] and does not feel safe in her home." *Id.*

//

### B. Overview of the Investigation

The Second Superseding Indictment alleges that Childress engaged in a scheme involving false representations to obtain financing for real estate and high-end cars. ECF No. 54 at 2–3. The investigation of Childress included an undercover component that is described in the original complaint. ECF No. 1 at 3. The declaration of Special Agent Kraig Palmer in support of the complaint describes Childress's involvement in a "credit bust out" scheme. *Id*. In a "credit bust-out," an individual uses credit to finance the purchase of many high-value items, such as vehicles, within a short period of time. *Id*. According to Agent Palmer, this is possible because individual credit reports are typically updated only on a monthly basis, permitting an individual to take out loans from multiple entities without those entities being alerted as to the other loans. *Id*.

Between September 12 and 25, 2016, Agent Palmer met with Childress in an undercover capacity. *Id*. at 3-4. During these meetings, Agent Palmer told Childress that Palmer had a contact at the Department of Motor Vehicles who could obtain washed titles. "Title washing" is a type of scheme in which vehicle titles are fraudulently altered to remove any listing of lienholders. *Id*. at 2. The effect of removing a lienholder from a title is that the person holding the "washed title" can sell the vehicle to a third party without notifying or paying the lienholder, which is typically a bank or other lender. Childress asked Agent Palmer to assist him in washing the titles of eight vehicles so that Childress could sell the vehicles without paying any lien or informing the lienholders. *Id*. at 4. In exchange, Childress promised Palmer a Jeep Rubicon, one of the eight vehicles. *Id*.

During one undercover meeting, Childress allegedly provided Agent Palmer with titles for two of the vehicles: a 2016 Land Rover and a 2016 Jeep Rubicon. *Id*. Agent Palmer reviewed the two titles, verified that they were printed on genuine DMV paper, and made specific observations indicating the titles had been washed. *Id*. In a recorded conversation, when Agent Palmer asked Childress about these titles, Childress told Palmer that Childress paid between three and four thousand dollars for each title and that

he had purchased them in a package of ten such titles. *Id*. at 5.

**C. Hearing to Revoke Bond**

On July 5, 2017, Judge Adler held a hearing on the Government's motion to revoke bail. At the hearing, the Government asserted that Childress should be detained because there was probable cause to believe that he committed a federal offense while out on bail and the evidence showed that he was a "financial danger to the community" and not willing to abide by conditions of release.

As to the new offense committed while out on bail, the Government relied upon count ten of the second superseding indictment charging a bank fraud violation. The Government proffered that within a few days of his release on bail, Childress set into motion a bank fraud scheme and took advantage of a new victim, J.R., an active duty sailor in the United States Navy. ECF No. 75 at 6. In the scheme, the Government alleged that Childress obtained an automobile check from J.R. that was then misappropriated by Childress for his personal expenses. *Id.* at 7–8.

As to Childress's unwillingness to abide by conditions of release, the Government pointed to Childress committing the first nine counts of the second superseding indictment while serving the end of a sentence for a previous supervised release violation. *Id*. at 8–9. Further, the Government relied on Childress's admitted violation of a direct order not to make contact with any victim or their parents. *Id*. at 9. Finally, the Government relied on the fact that Childress was allegedly living at an address in Escondido rather than one in Chula Vista as he reported to the Pretrial Services Office. *Id*.

Pretrial Services Officer Marisa Aliangan testified at this revocation hearing that Childress had been very difficult to supervise or verify his address, and that she had been unable to conduct unannounced home visits. *Id*. at 10.

Childress denied the substance of the Government's proffer. *Id*. at 8. Defense counsel argued that Childress did not pose a flight risk or a danger to the community and there were conditions that could be set to which Childress would comply. *Id*. at 5–6.

4

3:16-cr-2556-GPC

Specifically, defense counsel stated that the court's concerns could be adequately addressed by maintaining the prior conditions of release and adding a condition that Childress not engage in any financial transactions regarding automobiles or real estate. *Id*. at 6.

Judge Adler granted the motion to revoke bail, under 18 U.S.C. § 3148, finding that (1) there was probable cause to believe Childress committed a federal, state or local crime while on release, and (2) that Childress was unlikely to abide by any condition or combination of conditions of release. *Id*. at 14. Given that decision, Judge Adler found it unnecessary to rest his decision on whether Childress posed an "economic danger" to the community. *Id*. at 14–15.

**D. Applicable Law**

18 U.S.C. § 3145(b) provides:

> If a person is ordered detained by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

A magistrate judge's detention rulings are subject to *de novo* review by the district court. *See United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir.1990). The district court should review the evidence presented to the magistrate judge and make its own independent determination. *See id.* at 1193. The district court may also hold an evidentiary hearing. *See id.* "However, there is no requirement of live testimony by the government at a detention hearing." *United States v. Cabrera–Ortigoza,* 196 F.R.D. 571, 574 (S.D. Cal. 2000). At a detention hearing, the government and defendant may both proceed "by proffer or hearsay." *United States v. Winsor,* 785 F.2d 755, 756 (9th Cir. 1986) (per curiam); *see also Cabrera–Ortigoza,* 196 F.R.D. at 573–74. "The use of proffers and hearsay evidence are a necessary ingredient to the effective working of the Bail Reform Act, and prevention of a mini trial, or an early discovery expedition[,] further facilitates those goals." *Cabrera–Ortigoza,* 196 F.R.D. at 575–76. If there is a

question as to the accuracy of a proffer, the court "is authorized to reconcile the demand for speed in these proceedings and the reliability of the evidence by selectively insisting on the production of evidentiary sources." *United States v. Terrones,* 712 F.Supp. 786, 791 (S.D. Cal. 1989). But "absent something credible to challenge the reliability or correctness of the government's proffer, the Court need not compel live witnesses to testify." *Cabrera–Ortigoza,* 196 F.R.D. at 575.

In this case, the magistrate judge applied 18 U.S.C. § 3148 in revoking Childress's bail. Section 3148 provides that an individual on pretrial release who violates a condition of release "is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). In a proceeding to revoke an order of release, a judge "shall enter an order of revocation and detention if" after a hearing, the judge:

> (1) finds that there is--
>   (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>   (B) clear and convincing evidence that the person has violated any other condition of release; and
> (2) finds that--
>   (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>   (B) the person is unlikely to abide by any condition or combination of conditions of release.

*Id.* § 3148(b). Judge Adler found that (1) there was probable cause to believe that Childress committed a federal crime, i.e. bank fraud, while on release, and (2) he was unlikely to abide by any condition or combination of conditions of release. Childress challenged all of Judge Adler's findings and asked for permission to supplement the record as to both findings. In considering Childress's § 3145 motion, the Court reopened the evidentiary proceedings to allow Officer Aliangan and Childress to testify regarding the alleged violations.

**E. Findings of Fact**

After exercising its right of independent examination of the facts, findings and record before Judge Adler, as supplemented by the additional evidence developed at the December 13, 2017 hearing, the Court upholds Judge Adler's detention order and finds that it is amply supported by the record for the reasons set out below.

### 1. Commission of a Crime While on Release

There is probable cause to believe that Childress committed a federal crime while on release, specifically, violations of 18 U.S.C. §§ 1344 and 3147.

The record discloses that on December 13, 2016, Magistrate Judge Adler set conditions of release which directed the defendant to "not commit a federal, state or local crime during the period of release" and "not contact [D.G.] or her parents in any way." Officer Marisa Aliangan testified that on December 19, 2016, she met with Childress and reviewed with him all of the conditions of release, including the two described above. On that date, Childress signed a document delineating his reporting instructions and acknowledged that he understood his conditions of release.

The record further demonstrates that on June 20, 2017, a grand jury in the Southern District of California returned a Second Superseding Indictment in case number 16-CR-2556-GPC, charging Childress, *inter alia*, with violating 18 U.S.C. § 1344, bank fraud. Count ten of the Second Superseding Indictment alleges the defendant committed bank fraud while out on bail, that is, beginning no later than January 4, 2017, and continuing and through March 4, 2017, within the Southern District of California. Judge Adler relied upon the charge to support the finding that there was probable cause to conclude that Childress committed a federal crime while out on bail.

At the December 13, 2017 hearing, the Government proffered that Childress committed bank fraud relating to a car loan made to J.R. by making multiple misrepresentations on a bank draft that was deposited into Childress's bank account on March 4, 2017. The Government proffered that Childress made the bank draft payable to Exoticar International Auto Sales, described as the authorized vehicle dealer for a 2005

Bentley. *See* Hr'g Ex. 11. The Government also proffered that Childress never bought or sold the 2005 Bentley and therefore lied by not being the authorized vehicle dealer for the vehicle, and lied by endorsing the draft without having the ability or intent to perfect Navy Federal's security interest in the 2005 Bentley. Hr'g Ex. O. The Government pointed to exhibits demonstrating that the 2005 Bentley was actually transferred to another entity on or about March 6, 2017, and that Exoticar International Auto Sales was not registered to do business in California until March 17, 2017. Hrg. Ex. G. In addition, the Government submitted bank statements for the Exoticar International bank account which showed that following the deposit of the $17,870 bank draft, Childress did not spend any of the money on a vehicle for J.R. and spent all but $511 of the proceeds on himself. Hr'g Ex. 10.

Childress explained at the hearing that he had met J.R, an active duty sailor with the U.S. Navy, in December 2016, shortly before she was deployed at sea. Childress explained that J.R. was interested in obtaining a vehicle to replace her VW Tiguan and had obtained a loan from Navy Federal to be applied towards the purchase of a vehicle. Childress offered to locate a vehicle for J.R. and to arrange the purchase of a Range Rover or Mercedes SUV for her. On or around March 1, 2017, Childress learned of a 2005 Bentley available for sale in Michigan, placed the vehicle on hold and was waiting to receive the title on the VW so that arrangements could be made to sell the VW and apply the proceeds to purchase the 2005 Bentley. He explained that he was unable to complete the purchase of the 2005 Bentley because Navy Federal failed to provide the title to the VW in order to arrange the sale of the VW.

While Childress offered testimony and documents in order to overturn the prior probable cause determination by Judge Adler, the Court finds that they do not negate the probable cause to conclude that he violated 18 U.S.C. § 1344 by depositing a loan check based on the representation that a 2005 Bentley had been sold to J.R., and the promise that a lien on the 2005 Bentley would be recorded in favor of Navy Federal Credit Union, when in fact no such sale had taken place. Childress's testimony did not adequately

8

demonstrate that such a sale occurred or that he had the ability to record a lien on the 2005 Bentley.

## 2. Violation of Condition of Release

Officer Aliangan testified that on June 14, 2017, she received information that Childress had made contact with D.G.'s father. Officer Aliangan contacted D.G., who advised Officer Aliangan that D.G.'s father had been outside of the family home—which is situated in a cul de sac on Keeler Court—when he witnessed Childress in his vehicle across the street. D.G. reported to Officer Aliangan that Childress spoke with D.G.'s father about the father's finances and Childress told D.G.'s father that he could assist him financially if D.G. dropped a state court restraining order prohibiting Childress from having contact with D.G.

On June 20, 2017, Officer Aliangan directed Childress to report to the Pretrial Services Office to discuss these allegations. Childress stated to Officer Aliangan that on the day in question, Childress was in the area of D.G.'s father's home to visit a bank and look at a vehicle he was considering purchasing. Childress told Officer Aliangan that he saw D.G.'s father and engaged in conversation with him. Childress stated that he did not know he was not allowed to have contact with D.G.'s parents.

At the December 13 hearing, Childress denied that he ever made contact with D.G.'s father in the cul de sac on Keeler Court. Instead, Childress asserted that he was driving his vehicle along Boston Avenue, which is a street behind Keeler Court. Childress asserted that he saw D.G.'s father and merely waved to him, and that the two never had a conversation.

The Court finds Officer Aliangan credible in her recounting what D.G. reported to her about a conversation between Childress and D.G.'s father across the street from D.G.'s home on Keeler Court. Officer Aliangan's testimony as to what Childress admitted is consistent as to what D.G. reported to Aliangan. Thus, the Court independently concludes that Judge Adler's finding that Childress violated a condition of release, which prohibited Childress from having contact with D.G.'s father, is amply

supported by the record. The additional evidence submitted at the December 13, 2017 hearing did nothing to alter the Court's conclusion on that issue.

### 3. Unlikelihood that Childress Will Abide by Conditions of Release

The Court finds that it is unlikely Childress will abide by any condition or combination of conditions of release. During the various hearings relating to this motion, Childress has repeatedly invoked *United States v. Salerno*, 481 U.S. 739 (1987), as supporting his position that he is entitled to pretrial release. The Court disagrees. In *Salerno*, the Court rejected a facial challenge to the Bail Reform Act of 1984, and in doing so, acknowledged the government's "legitimate and compelling" interest in "preventing crime by arrestees." *Id.* at 749. As recognized in *United States v. Tortora*, 922 F.2d 880, 886-87 (1st Cir.1990), elaborate conditions of release dependent upon good faith compliance are sometimes insufficient when a defendant's criminal history provides no basis for believing good faith will be forthcoming. Regarding a defendant's good faith, it has been observed that:

> The quintessential factor is whether the defendant will do as the court directs. There are a variety of conditions that could reduce potential danger and flight if a defendant would abide by them. Examples include home confinement, electronic monitoring, curfews, pretrial services or family supervision, drug testing and treatment, and employment or educational mandates. However, none of these conditions will suffice to protect the community or minimize the flight risk if a defendant's past behavior amply demonstrates that he will not honor them. In other words, past behavior best predicts future behavior and whether the court can rely on a defendant's good faith promises. Therefore, an analysis of how a defendant has honored his criminal justice promises in the past is a critical component of the bail analysis.

*United States v. Barnett*, No. 5:03-CR-243, 2003 WL 22143710, at *12 (N.D.N.Y. Sept. 17, 2003).

In Childress's case, the Court notes that he repeatedly failed to abide by conditions of supervised release imposed following a 2002 conviction for false statement in a loan application conviction. *See* ECF No. 72 at 7–8 (setting forth Childress's failure to abide

by conditions of supervised release in *United States v. Childress*, No. 00-cr-80466-GCS (E.D. Mich.)). He was sentenced on June 13, 2002 to 11 months custody and five years of supervised release. After receiving a long period of supervised release, specifically because of his "potential for continuing to engage in fraud after his release," and Childress's assuring the court that he was going to cease "dealing with financial things at all because [he] fe[lt] like this is what got [him] here," Childress repeatedly violated his conditions of supervised release. Following his release from custody on March 27, 2004, Childress was found to have violated conditions of supervised release repeatedly, including the following violations: (1) in 2005, he pled guilty to a misdemeanor after acquiring an automobile by giving a Jaguar dealer a $20,000 check when the account had a balance of -$271.64; (2) in 2008, he was convicted of larceny by conversion of $20,000 or more, and was sentenced to a range of 54 months to 30 years; and (3) in 2010, he was convicted of false pretenses of $20,000 or more.

As a result of these violations, in September of 2010, U.S. District Judge George C. Steeh imposed a 36-month sentence for the supervised release violations. At the time that he imposed sentence, Judge Steeh observed that "[t]he fact that this criminal activity could occur while on supervision here is somewhat astounding." ECF No. 72 at 8. The Sixth Circuit affirmed Judge Steeh's sentence, holding, among other things, that the sentence was supported by the incorrigibleness of Childress's conduct and "society's expectation to be free from stealing and not be defrauded." *See United States v. Childress*, 468 Fed. App'x 471, 479 (6th Cir. 2012). Given Childress's recidivism while under federal court supervision, the Court concludes that it cannot count on Childress's good faith to comply with any condition, or combination of conditions, of release.

The Court also finds it unlikely that Childress will abide by any conditions of release in light of his recent failure to abide by the condition that he not make contact with the parents of a victim witness. The Court is particularly concerned about Childress's claim that he did not know that he was prohibited from making contact with D.G.'s father, even though his conditions of release were explained to him. Childress's

alternate explanation—that he just happened to be in the neighborhood of D.G.'s father's home to visit a bank and view a vehicle for sale—is implausible given the report of D.G. that Childress engaged D.G.'s father in conversation about D.G. dissolving the state court restraining order.  Childress's clear violation of his previous conditions, coupled with his implausible explanation as to why he believed he was not violating those conditions, suggest that he is simply unwilling to abide by conditions the Court places on his conduct while released.  In sum, the Court concludes that it is very unlikely Childress will abide by any conditions of release.

### 4. 18 U.S.C. § 3142(g) Factors

Having found that § 3148(2)(B) applied to Childress's conduct, Judge Adler concluded that it unnecessary to engage with the § 3142(g) factors to determine whether Childress is a "financial danger" to the community.  *See id.* § 3148(2)(A).  As explained above, this Court agrees with Judge Adler's conclusion that § 3148(2)(B) applies.  But even if it were to engage in its own review of the § 3142(g) factors, the Court would conclude that there is no condition or combination of conditions of release that would assure that Childress does not pose a financial danger to the community.

First, with respect to the nature and seriousness of the charges against Childress—wire and bank fraud—the Court acknowledges that his charges are not particularly severe, at least as compared to "a Federal crime of terrorism, or [a crime] involv[ing] a minor victim or a controlled substance, firearm explosive, or destructive device."  18 U.S.C. § 3142(g)(1).  However, that fact is offset by the fourth § 3142(g) factor, that is, Childress has demonstrated that he poses a serious danger to the community.  *See id.* § 3142(g)(4) ("the nature and seriousness of the danger to any person or the community that would be posed by the person's release").  Childress has a serious record of defrauding members of the community, particularly when under the supervision of a federal court.  He also has proven himself capable of avoiding detection when engaging in this fraudulent behavior, even when under such supervision.

The second and third factors also support the government's position that Childress

poses a financial threat to the community.  With respect to the second factor, as discussed above, the weight of the evidence against Childress is substantial.  *See id.* § 3142(g)(2).  And as to the third factor, Childress's "history and characteristics" weigh heavily against him.  *See id.* § 3142(g)(3).  He has a serious history of fraud-related criminal conduct, and has demonstrated an inability to adhere to instructions by the Court.  The Court acknowledges that Childress appears to have consistently and timely appeared for court dates and pretrial and probation appointments, as emphasized on multiple occasions by his counsel.  But that conduct is relevant only to whether Childress poses a flight risk, not whether he is a danger to the community.  Finally, much of his criminal conduct has occurred while he has been "on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law."  18 U.S.C. § 3142(g)(3)(B).

## CONCLUSION

For the foregoing reasons, Defendant's Motions to Revoke the Detention Order and Set Bail Conditions are hereby **DENIED**.  *See* ECF Nos. 71, 79.

Childress is committed to the custody of the Attorney General or his designated representative to be held without bail pending disposition of this case in a corrections facility separate to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Childress shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver Childress to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

Dated:  December 15, 2017

Hon. Gonzalo P. Curiel
United States District Judge