UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, v. ROBERT LEE CHILDRESS, JR., Defendant. | Case No.: 3:16-cr-02556-GPC<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO SEVER COUNTS 1 THROUGH 9 FROM COUNT 10 [ECF No. 111];**<br><br>**(2) DENYING MOTION TO DISMISS AND MOTION TO STRIKE [ECF No. 90]; and**<br><br>**(3) DENYING MOTION TO DISMISS AND MOTION FOR BILL OF PARTICULARS [ECF No. 68]** |
|---|---|

Defendant Robert Lee Childress, Jr., has moved to sever Counts One through Nine of the operative indictment from Count Ten and its corresponding enhancement allegation under 18 U.S.C. § 3147. (ECF No. 111.) The United States opposes severance of these counts. (ECF No. 112.) A hearing was held on August 3, 2018. (ECF No. 116.) Upon consideration of the moving papers, applicable law and argument of counsel, and for the reasons set forth below, the Court hereby **GRANTS** the motion to sever (ECF No. 111) and **DENIES** Childress's previously filed motions to dismiss and strike. (ECF Nos.

68, 90.)

## FACTUAL BACKGROUND

On November 2, 2016, a grand jury returned an indictment charging Childress with eight counts of wire fraud. (ECF No. 22.) On December 13, 2016, Childress was released on a $30,000 personal surety bond secured by Childress's signature and a $5,000 deposit. (ECF Nos. 34, 35.) Magistrate Judge Jan Adler imposed a number of conditions of release, including conditions directing Childress (1) not contact D.G. – the victim of his alleged fraud scheme – or her parents in any way; (2) not to open any lines of credit without the prior approval of Pretrial Services; and (3) "not to make any efforts to convince others to open lines of credit on his behalf." (*Id.*)

According to the Government, Childress engaged in another fraudulent act while on his pre-trial release. The Government asserts that after being released, Childress began dating someone with the initials J.R., whom he later convinced to purchase a new vehicle. After J.R. obtained a refinanced auto loan through Navy Federal Credit Union, she gave Childress the loan check, which Childress allegedly deposited and used for his own purposes.

On March 8, 2017, the grand jury returned its First Superseding Indictment, which added another count of wire fraud and expanded the scope of Childress's alleged scheme to defraud lenders. (ECF No. 41.) On June 21, 2017, the grand jury returned its Second Superseding Indictment ("SSI"), which added (1) a bank fraud charge (Count Ten) based on Childress's alleged conduct with respect to J.R. and Navy Federal Credit Union, and (2) a sentence enhancement under 18 U.S.C. § 3147 because that conduct allegedly occurred during Childress's pre-trial release. (ECF No. 54.) Childress was rearrested on June 27, 2017. (ECF No. 58.) Childress has pled not guilty to all counts in the SSI.

## DISCUSSION

### A. MOTION TO SEVER COUNTS

Childress moves to sever Counts One through Nine and Count Ten and its corresponding enhancement on two grounds: (1) under Federal Rule of Criminal

Procedure 8, these counts were misjoined, and (2) under Federal Rule of Criminal Procedure 14, the prejudice resulting from the joinder of these counts warrants severance. The Court agrees with Childress's latter argument; as a result, it need not address the former.

Federal Rule of Criminal Procedure 14(a) provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . . , the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." To prevail on a motion to sever under Rule 14, a defendant must show that joinder is "so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy and compel[s] exercise of the court's discretion to sever." *United States v. Nolan*, 700 F.2d 479, 482 (9th Cir. 1982) (quoting *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980)). Because "some prejudice is inherent in any joinder," a defendant must show something more than simple prejudice. *United States v. Smith*, 893 F.2d 1573, 1581 (9th Cir. 1990).

There are three kinds of prejudice that may arise out of a joinder of offenses: (1) "the jury may consider that the defendant must be bad" because he is charged with numerous counts; (2) "inadmissible proof of one offense may be admissible through a joined offense"; and (3) "the defendant may wish to testify on one count but not another." *United States v. Ragghianti*, 527 F.2d 586, 587 (9th Cir. 1975).

### 1. Prejudice from Jury Concluding Childress is Bad

Courts have acknowledged the risk that multiple charges in a single trial may lead a jury to cumulate the evidence against the accused and infer that he has a criminal disposition. *United States v. Barrett*, 505 F.2d 1091, 1106 (7th Cir. 1974) ("Obviously any adding of offenses to others is prejudicial to some extent."). However, the mere claim that the jury will infer a criminal disposition and thus make it more difficult for the accused to make his case is not enough to achieve severance. *United States v. Boulanger*, 444 F.3d 76, 88 (1st Cir. 2006) (claim that the jury would infer a criminal disposition from the joinder of counts insufficient to require severance where this type of alleged

prejudice was "standard fare [that exists] whenever counts involving discrete incidents are linked in a single indictment").

In the instant case, Childress is charged with nine counts of wire fraud, all of which allege conduct that followed Childress's release from a halfway house after he completed a federal criminal sentence for fraud. According to the Government, this conduct occurred after an employee at the halfway house connected Childress with an undercover law enforcement officer, who was investigating stolen-car rings. It appears likely that, to prove these nine counts, the Government will offer evidence about Childress's contacts while at the halfway house. Meanwhile, Count Ten charges Childress with committing a separate fraudulent act involving J.R., a different victim from the victim involved in Counts One through Nine, D.G. As noted above, Count Ten also seeks a penalty enhancement based upon Childress allegedly committing a further crime while out on bail. The Government acknowledges that this enhancement must be presented and proved to the jury.

The Government's presentation as to both sets of charges will likely result in the jury's exposure to evidence beyond the proof of the commission of these crimes. Combining all ten counts in one trial is likely to cause a jury not only to infer that Childress has a criminal disposition, but also to cumulate the evidence such that the jury would conclude that because Childress is a "bad man," he was more likely than an average individual to commit all of the offenses charged in the SSI. What's more, exposure to all of this evidence in the same trial may cause the jury to develop "a latent feeling of hostility toward" him. *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987). If that occurs, there is a serious risk that a guilty verdict would be the result of the jury's feelings towards Childress, and not the facts of this case.

The above facts create a significant risk of prejudice to Childress that cannot be reasonably described as "standard fare" in the linking of discrete incidents. *Boulanger*, 444 F.3d at 88. Joinder under the circumstances of this case of Counts One through Nine and Count Ten presents a risk of prejudice that outweighs the dominant concern of

judicial economy.

## 2. Prejudicial Spillover

In opposing severance, the Government argues that there is a substantial overlap of evidence that will be admitted to support Counts One through Nine and Count Ten. Overlapping evidence between counts tends to make joinder appropriate. *Id.* (holding that there is no prejudice in failing to sever counts where evidence would be cross-admissible in separate trials). The Government submits that each of the counts will involve the same proof of Childress's exotic car business and his knowledge regarding car titles, licensing and financing. The "cross-admissibility" of this evidence supports the Government's position that a joint trial in this case will conserve judicial resources.

Childress's knowledge of the retail car business, however, is only a minor part of this case. The cross-admissibility of evidence on this issue does not eliminate the risk of prejudicial spillover resulting from a joint trial. As discussed above, there could be a seriously prejudicial effect of the jury hearing evidence regarding Childress having made criminal contacts while in a halfway house (Counts One through Nine), and separately engaging in criminal conduct while out on bail (Count Ten and its enhancement). To that extent, the Government's evidence on one set of counts would not be admissible as to the other. Faced with this evidence about the circumstances of the other set of counts, there is a serious risk that the jury might conclude that Childress is a recidivist who was eager to get out of the halfway house to engage in criminal activity, and that even after being arrested again, and facing the original indictment in this case, he was undeterred in becoming involved in another criminal scheme.

The Government asserts that the Court's use of limiting jury instructions can minimize the risk of prejudice. Given the nature of this evidence, however, the Court concludes that a limiting instruction would be insufficient to prevent unfair prejudice from spillover.

## 3. Childress's Desire to Testify on Count Ten

Prejudice may also result in a joint trial when an accused wishes to testify as to one

5

offense, but not the other, and particularly so when the joined offenses are clearly distinct in time, place and evidence. *Cross v. United States*, 335 F.2d 987, 989 (D.C. Cir. 1964). When such counts are joined at trial, the defendant cannot properly weigh the various factors relevant to an accused's decision to testify on his own behalf. "If he testifies on one count, he runs the risk that any adverse effects will influence the jury's consideration of the other count," and he therefore "bears the risk on both counts, although he may benefit on only one." *Id.* Regardless of whether this dilemma impacts a defendant's constitutional right to remain silent, it is relevant to the Court's Rule 14 analysis. *Id.* ("It is not necessary to decide whether this invades [the defendant's] constitutional right to remain silent, since we think it constitutes prejudice within the meaning of Rule 14."). Childress asserts that he will be prejudiced by a joint trial because he may want to testify as to the charges in Count Ten and the related enhancement, but not as to Counts One through Nine. The Government concedes that Childress may choose to so testify, but it asserts that Childress has done little to show that he has important testimony to give on Count Ten. It is true that Childress's motion offers little support as to this prong. Nonetheless, he has shown that he is quite prepared to testify to support his position as to Count Ten. At his bail review proceedings, Childress gave a wide range of testimony relating to the events leading to the charge in Count Ten. It may be necessary for Childress to take the stand during the Government's presentation of Count Ten to address the Government's use of Childress's bail review testimony. While this factor provides perhaps the least support for severance of the three factors considered, it nonetheless supports severance.

**B. Other Motions**

Through prior counsel, Childress moved to dismiss the SSI based upon misjoinder and to strike as a result of surplusage. (ECF No. 90.) To the extent that the motions are based upon misjoinder, severance will remove any possible prejudice. As such, the motion is DENIED as to the issue of misjoinder.

As for Childress's motion to strike the SSI as a result of surplusage, the Court

6

3:16-cr-02556-GPC

finds his arguments lack merit.  He first argues that the assertion in Paragraph One that Childress began to devise his fraudulent scheme in February 2015 is contrary to the assertion in Paragraph Nine that Childress's first wire communication occurred on March 14, 2016.  The Court disagrees.  Just because Childress's first wire communication occurred at the beginning of 2016 does not mean that he did not begin to devise his scheme a year before then.  Childress next argues that Paragraphs Two through Four are prejudicial, immaterial, irrelevant, and inflammatory.  But these paragraphs set forth the basic facts underlying Childress's alleged scheme: making false representations about his creditworthiness, purchasing high-end cars using loans based on those misrepresentations, and convincing D.G. to send him money based on similar misrepresentations.  Childress asserts that Paragraph Five should be stricken because it includes the assertion that Childress used D.G.'s information to "attempt to finance" the purchase of high-end cars.  Childress's attempts to use D.G.'s information to purchase the vehicles is relevant to his intent in enacting his scheme.  Last, Childress argues that Paragraphs Six through Eight should be stricken because they are not relevant to the scheme.  Again, the Court disagrees.  These paragraphs include vital aspects of Childress's scheme by alleging that Childress sold the high-end vehicles by hiding liens on the titles of the vehicles, and that he used the proceeds from the sales for personal use.

Through a different prior counsel, Childress also moved to dismiss the SSI on the ground of misjoinder.  (ECF No. 68.)  For the reasons stated above, that motion is denied.  In the same motion, Childress moved for a bill of particulars as to Count Ten.  He asserts that the SSI does not sufficiently inform him of the charges against him, and should give more information about "what way and when Mr. Childress represented to Navy Federal, Jamilah Randolph or any other interested party that he had sold a particular vehicle to Jamilah Randolph when in fact he had not done so." (*Id.* at 11.)  The Court finds this request unwarranted.  The allegations in Count Ten refers to a single check, which the SSI alleges Childress deposited using "the representation that a vehicle had been sold to J.R. and the promise that a lien on the vehicle would be recorded in favor of the financial

institution." (ECF No. 54 at 4–5.) To the extent that the SSI refers to the single check, Childress has been directed by the SSI's allegations to what representation was made during his depositing of that check, and why that representation was false. Because it was Childress himself who made this representation, the SSI provides Childress with sufficient notice of the charge against him to enable him to prepare a defense. The Court **DENIES** the motion for a bill of particulars, but does so without prejudice to Childress refiling such a request with a more detailed discussion of the need for such information.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Severance, ECF No. 111, is hereby **GRANTED**. The Court will proceed with trial on Counts One through Nine, to be followed by a second trial on Count Ten and the 18 U.S.C. § 3147 allegation.

The Defendant's previously filed motions (ECF Nos. 54, 90) are **DENIED**.

**IT IS SO ORDERED.**

Dated: August 8, 2018

Hon. Gonzalo P. Curiel
United States District Judge