UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT LEE CHILDRESS,<br><br>　　　　　　　　　　　Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Respondent. | Case No.: 16-CR-2556-GPC<br>Related Case: 24cv815-GPC<br><br>**ORDER DENYING PETITIONER'S AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>**[Dkt. Nos. 235, 247.]** |

　　　　Petitioner Robert Lee Childress ("Petitioner") filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 petition").  (Dkt. No. 235.) Respondent filed an opposition on June 24, 2024.[1]  (Dkt. Nos. 238.)  On July 26, 2024, Petitioner filed a reply.  (Dkt. No. 253.)  Petitioner subsequently filed an amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 along with an

---

[1] The Court granted the government's request for extension of time to file its response.  (Dkt. Nos. 239, 243.)

1

amended memorandum of law.[2] (Dkt. Nos. 247, 252.) In response to Respondent's opposition filed on June 24, 2024, Petitioner filed a reply on July 26, 2024.[3] (Dkt. No. 253.)

Petitioner has also filed a number of motions including a motion for summary judgment on July 1, 2024, (Dkt. No. 245); a motion for appointment of counsel on July 12, 2024, (Dkt. No. 248); a motion for evidentiary hearing and a motion for discovery on July 22, 2024, (Dkt. Nos. 250, 251); a motion for oral argument in support of his petition, (Dkt. No. 254); and a motion to submit discovery, (Dkt. No. 255). Based on the reasoning below, the Court DENIES Petitioner's amended petition to vacate, set aside, or correct sentence, DENIES the request for evidentiary hearing, and DENIES the remaining motions as MOOT.

**Background**

Petitioner was arrested on October 4, 2016, and charged in a complaint with one count of committing bank fraud in violation of 18 U.S.C. § 1344. (Dkt. No. 1.) On November 2, 2016, a grand jury returned an indictment charging Petitioner with eight counts of wire fraud in violation of 18 U.S.C. § 1343. (Dkt. No. 22.) On March 8, 2017, the grand jury returned a first superseding indictment, which added another count of wire

---

[2] Because the arguments and claims in the amended motion to vacate, set aside, or correct are largely similar to the original motion to vacate, set aside or correct, the Court did not direct additional briefing by the government. The Court recognizes that Petitioner added an additional claim of the Court's lack of jurisdiction over the wire fraud conviction.

[3] On June 27, 2024, Petitioner filed a reply seeking summary habeas relief due to Respondent's failure to respond. (Dkt. No. 244.) At that time, Petitioner had not yet received the Court's order granting Respondent's request to file a late response. (*See* Dkt. No. 243.) On July 8, 2024, in light of the Court's order granting Respondent an extension of time, Petitioner filed a request to strike his original reply and allowing him to file a reply to Respondent's opposition. (Dkt. No. 246.) Finding good cause, the Court GRANTS the motion to strike his original reply filed on June 27, 2024. (Dkt. No. 246.)

1  fraud and expanded the scope of Petitioner's alleged scheme to defraud lenders. (Dkt.
2  No. 41.)  On June 21, 2017, the grand jury returned a second superseding indictment
3  which added (1) a bank fraud charge and (2) a sentence enhancement under 18 U.S.C. §
4  3147 because that conduct allegedly occurred during Petitioner's pre-trial release. (Dkt.
5  No. 54.)

6      On July 10, 2019, an information for one count of wire fraud, 18 U.S.C. § 1343,
7  was filed as well as Petitioner's waiver of an indictment and consent to prosecution by
8  information. (Dkt. Nos. 153, 154.)  On the same day, Petitioner entered into a guilty plea
9  to count one of the information for wire fraud. (Dkt. Nos. 155, 156.)  The plea agreement
10 included a waiver of the rights to bring an appeal and collaterally attack his conviction or
11 sentence. (Dkt. No. 156 at 10.)  On March 29, 2021, the Court sentenced Petitioner to
12 time served, three years of supervised release, and restitution in the amount of $17,870.
13 (Dkt. Nos. 188, 189.)  The Court also granted the government's oral motion to dismiss
14 the underlying indictments. (Dkt. Nos. 188, 189.)

15     Over three years later, on May 7, 2024, Petitioner filed the instant § 2255 petition.
16 (Dkt. No. 235.)  On July 11, 2024, Petitioner filed an amended § 2255 petition raising the
17 following claims: (1) his plea was involuntary and unintelligent because the government
18 failed to disclose *Brady*[4] material relating to jurisdiction, whether there was a interstate
19 wire communication, and venue, whether the wire transmission originated, passed
20 through or was received in the Southern District of California, over the wire fraud
21 conviction, (Dkt. No. 247 at 7[5]; Dkt. No. 252 at 13); (2) the court lacked jurisdiction to
22 render judgment on the wire fraud count and because the government withheld *Brady*

---

[4] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[5] Page numbers are based on the CM/ECF pagination.

3

1  material showing there was an interstate wire communication, (Dkt. No. 247 at 2; Dkt.
2  No. 252 at 5-6); (3) the court lacked jurisdiction due to lack of venue and also due to
3  *Brady* violation for the government's failure to disclose material evidence that venue was
4  not proper in the Southern District of California; (Dkt. No. 247 at 3; Dkt. No. 252 at 6-7);
5  (4) illegal arrest and unreasonable search and seizure in violation of his Fourth
6  Amendment and due process rights arising from fruits of the poisonous tree evidence
7  procured by the affiant's false statement before the Magistrate Judge to issue a warrant
8  and before the grand jury to obtain indictments against him; (Dkt No. 247 at 4-5; Dkt.
9  No. 252 at 7-9); (5) *Brady* violation for withholding material evidence concerning
10 whether there was an interstate wire transmission and that the wire never began, passed
11 through or was completed in this district to support venue, (Dkt. No. 247 at 6; Dkt. No.
12 252 at 10-12); and (5) actual innocence because federal jurisdiction was not conferred
13 upon this Court and venue was not proper in this district. (Dkt. No. 247 at 10-13; Dkt.
14 No. 252 at 15.) Respondent argues that Petitioner waived his right to collaterally attack
15 his conviction and sentence as part of his plea agreement and his waiver was knowing
16 and voluntary. (Dkt. No. 238 at 4-6.) Next, it maintains that Petitioner's claims are
17 untimely as they were filed past the one-year statute of limitations under 28 U.S.C. §
18 2255(f), and even if not barred, his claims are without merit.

## DISCUSSION

**A.     Standard of Review on 28 U.S.C. § 2255**

Section 2255 authorizes this Court to "vacate, set aside, or correct the sentence" of a federal prisoner on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). To warrant relief

under section 2255, a prisoner must allege a constitutional or jurisdictional error, or a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (quoting *Hill v. United States*, 368 U.S. 424 (1962)). A federal prisoner may collaterally attack the legality of his conviction or sentence through a motion to vacate, set aside, or correct his sentence under § 2255. 28 U.S.C. § 2255(a).

**B.     Waiver of Right to Collateral Attack**

Prior to considering the merits of Petitioner's claims, the Court must determine whether he waived his right to collaterally challenge his conviction and sentence by pleading guilty.[6]

Respondent argues that Petitioner waived his right to collaterally attack his conviction and sentence as part of the plea agreement and his waiver was knowing and voluntary. (Dkt. No. 238 at 4-6.) Petitioner claims that his plea, including his waiver of collateral review, was not voluntary or knowing because the government withheld *Brady* evidence that there was an interstate wire communication to support jurisdiction over the

---

[6] Respondent does not allege that Petitioner is procedurally barred from challenging the voluntariness of his plea because he failed to raise them on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'"). Because the government failed to raise the issue, it waived the defense. *United States v. Barron*, 172 F.3d 1153, 1156 (9th Cir.1999) (*en banc*) (government's failure to raise petitioner's procedural default in district court waives the defense in the absence of extraordinary circumstances suggesting that the omission should be overlooked).

wire fraud conviction and that venue was not proper in this district.[7] (Dkt. No. 247 at 7-9; Dkt. No. 252 at 12-14.)

"A defendant's waiver of his rights to appeal and to bring a collateral attack is generally enforced if '(1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made.'" *Davies v. Benov,* 856 F.3d 1243, 12 (9th Cir. 2017) (quoting *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (*en banc*))). The Ninth Circuit applies contract law to interpret a plea agreement. *United States v. Speelman*, 431 F.3d 1226, 1229 (9th Cir. 2005) ("Our interpretation of the terms of the plea agreement are controlled by the principles of contract law.") Because contract law is used to construe a plea agreement, courts review the "terms of the written plea agreement and the statements made under oath during the plea colloquy." *United States v. Jackson*, 21 F.4th 1205, 1213 (9th Cir. 2022) (citing *Brown v. Poole*, 337 F.3d 1155, 1160 (9th Cir. 2003)).

However, a claim that a plea agreement, including a waiver, was involuntary may not be waived. *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A conviction based upon such a plea [that is not voluntary] is open to collateral attack."); *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005) ("[A] plea agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2255 is unenforceable with respect to . . . [a] claim that challenges the voluntariness of the waiver."). Therefore, "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the

---

[7] In his original petition, Petitioner claims he only recently discovered in February 2024 that venue for the wire fraud count could only have been brought in the Central District of California. (Dkt. No. 235-1 at 6.) However, he provides no facts as to what he discovered in February 2024.

underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).

### 1.   Whether Plea was Voluntary and Knowing Due to *Brady* Violation

Here, Petitioner argues his plea was not voluntary and knowing because the government withheld *Brady* material concerning the Court's jurisdiction over the wire fraud conviction and whether venue on that conviction was proper in this district. (Dkt. No. 252 at 6, 7.) Because of the *Brady* violation, Petitioner claims he did not have all the relevant, material information to make a knowing plea. (*Id.*) Respondent contends that Petitioner's plea was knowing and voluntary and Petitioner has not pointed to any exculpatory evidence that it allegedly withheld and suppressed regarding the conviction. (Dkt. No. 238 at 5-6, 11-12.)

"A plea is voluntary if it 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *United States v. Seng Chen Yong*, 926 F.3d 582, 590 (9th Cir. 2019) (quoting *United States v. Kaczynski,* 239 F.3d 1108, 1114 (9th Cir. 2001)). A knowing and voluntary guilty plea "must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Id.* Petitioner bears the burden of showing his guilty plea was not voluntary and knowing. *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006).

A defendant may claim that his guilty plea was not voluntary and intelligent because the government withheld *Brady* material. *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) ("We therefore hold that a defendant challenging the voluntariness of a guilty plea may assert a *Brady* claim" because a waiver cannot be deemed "intelligent and voluntary" if "entered without knowledge of material

information withheld by the prosecution.") (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)).

First, the Court considers whether Petitioner's claim that evidence regarding jurisdiction and venue allegedly withheld by the government constitutes *Brady* material.[8]

Under *Brady,* the due process clause of the U.S. Constitution requires the government to disclose exculpatory material to the defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). A due process violation under *Brady* has "three components": "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the [government], either willfully or inadvertently; and [3] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Suppression of evidence means evidence "known to the government but not disclosed to the defendant." *United States v. Cloud,* 102 F.4th 968, 976 (9th Cir. 2024).

First, Petitioner does not articulate what *Brady* material concerning jurisdiction and venue existed that were held by the government and suppressed. *See Strickler*, 527 U.S. at 281-82; *see Paradis v. Arave*, 240 F.3d 1169, 1176-77 (9th Cir. 2001) (*prosecutor notes* regarding medical examiner's opinions regarding time and location of victim's death were material to issue of whether victim died in state where body was found, so that jurisdiction existed, and thus were subject to disclosure under *Brady*.).

---

[8] The Court notes that the plea agreement does not waive the right to receive *Brady* material. The plea agreement provides that "[a]ny information establishing the factual innocence of [Petitioner] known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of Defendant." (Dkt. No. 238-1 at 5.)

1       Additionally, even if venue and jurisdiction concerning interstate wire communication could be construed as being exculpatory, no *Brady* issue exists if the alleged suppressed information was apparent to the defendant or within the knowledge of the defendant. *See Cunningham v. Wong,* 704 F.3d 1143, 1154 (9th Cir. 2013) (if "'the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence,' the government's failure to bring the evidence to the direct attention of the defense does not constitute 'suppression'") (quoting *Raley v. Ylst,* 470 F.3d 792, 804 (9th Cir. 2006)); *Pickford v. Janda*, 660 Fed. App'x 494, 496 (9th Cir. 2016) ("[e]vidence is not 'suppressed' under Brady where the defendant is "'aware of the essential facts enabling him to take advantage of any exculpatory evidence.'") (quoting *United States v. Shaffer*, 789 F.2d 682, 690 (9th Cir. 1986)).

      In *Cunningham*, the defendant's attorneys possessed the "'salient facts' that would have allowed them to access [the victim's] medical records. They knew he had been shot and was treated by medical personnel following the shooting. There was no suppression of this easily attainable evidence." *Cunningham*, 704 F.3d at 1154; *see Raley*, 470 F.3d at 804 ("Because Petitioner knew of the existence of the evidence, his counsel could have sought the documents through discovery."); *Bonnaudet v. Henry,* 303 F. App'x 375, 376 (9th Cir. 2008) ("[P]etitioner's *Brady* claim fails because she supposedly took the van to the body shop herself and knew its condition [and] was therefore 'aware of the essential facts enabling [her] to take advantage of [the] exculpatory evidence.'").

      In this case, the information alleged that the wire fraud conduct included the use of "interstate wire communication to carry out and attempt to carry out an essential part of the scheme; all in violation of Title 18, United States Code, Section 1343" and the scheme to defraud occurred "within the Southern District of California." (Dkt. No. 153.) Further, the underlying factual bases for the wire fraud count and venue were articulated

1  at the plea hearing and explicitly written in the plea agreement, including why venue was
2  proper in the Southern District of California and the basis for the interstate wire
3  communication.  (Dkt. No. 242-1 at 17-18; Dkt. No. 238-1 at 3-4.)  Petitioner was aware
4  of the government's bases of venue and jurisdiction over the wire fraud charge.  To the
5  extent Petitioner or his counsel disagreed or questioned whether venue was proper in the
6  Southern District of California, or whether the Court had jurisdiction over the wire fraud
7  conviction, Petitioner or his attorney could have investigated.  Therefore, Petitioner's
8  claims that the government withheld *Brady* evidence is without merit and accordingly, he
9  has not demonstrated that his plea was not voluntary and knowing based on *Brady*
10 violations concerning venue and jurisdiction.

       **2.     Exceptions to Waiver of Right to Collateral Attack**

12     Petitioner also appears to independently allege that the Court was without authority
13 over his conviction because there was no interstate wire communication and lack of
14 proper venue; therefore, he may collaterally challenge his conviction.  (*See* Dkt. No. 252
15 at 5-7.)  Respondent argues that by pleading guilty, Petitioner waived any challenge to
16 "all nonjurisdictional antecedent rulings."  (Dkt. No. 238 at 5.)
17     When a defendant challenges his guilty plea as not knowing and not voluntary, the
18 court's inquiry is limited to the voluntariness of the plea and any independent challenges
19 arising from pre-plea deprivations of constitutional rights are generally foreclosed.  *See*
20 *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973).  In *Tollett,* the Court explained that "a
21 guilty plea represents a break in the chain of events which has preceded it in the criminal
22 process.  When a criminal defendant has solemnly admitted in open court that he is in
23 fact guilty of the offense with which he is charged, he may not thereafter raise
24 independent claims relating to the deprivation of constitutional rights that occurred prior

1 to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea . . . ." *Id.* at 267.

"The Supreme Court has, however, carved out narrow exceptions to the rule foreclosing appeal of independent claims when the defect in question is a 'jurisdictional' one." *United States v. Johnston*, 199 F.3d 1015, 1019 n. 3 (9th Cir. 1999).  For instance, "[a] plea of guilty to a charge does not waive a claim that the charge is one which the government constitutionally may not prosecute." *United States v. Cortez*, 973 F.2d 764, 766 (9th Cir. 1992) (citing *Menna v. New York*, 423 U.S. 61, 62 (1975) and *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)).  In *Menna,* the Supreme Court held that a guilty plea did not foreclose the defendant's right to claim a double jeopardy violation.  *Menna*, 423 U.S. at 62-63.  In *Blackledge*, the Court held that the guilty plea did not bar relief to claims of vindictive prosecution because the initiation of proceedings against the defendant operated to deny him due process of law.  *Blackledge*, 417 U.S. at 30-31.  Subsequently, in *Broce*, the Court limited the scope of those exceptions to include only those claims, as in *Menna* and *Blackledge*, that can be adjudicated on the face of the indictment and record and the charge is one which the state may not constitutionally prosecute.  *United States v. Broce*, 488 U.S. 563, 574-76 (1989)*; see Cortez*, 973 F.2d at 767 (jurisdictional claim exception limited to "those cases in which the district court could determine that the government lacked the power to bring the indictment *at the time of accepting the guilty plea from the face of the indictment or from the record.*") (emphasis in original)).

Whether a claim is "jurisdictional" depends on "whether the claim can be resolved by examining the face of the indictment or the record at the time of the plea without requiring further proceedings." *United States v. Caperell*, 938 F.2d 975, 977-78 (9th Cir. 1991). In *Caperell,* the court explained that "[c]laims that 'the applicable statute is unconstitutional or that the indictment fails to state an offense' are jurisdictional claims

1  not waived by the guilty plea" because they could be resolved by examining the
2  indictment and the relevant statute. *Id.* at 977.  Therefore, the court could consider the
3  appellant's argument that the indictment failed to state a claim based on the claim that
4  methamphetamine was unlawfully included as a schedule II non-narcotic controlled
5  substance. *Id.*  In contrast, in *Mathews*, the defendant challenged the factual basis giving
6  rise to the court's jurisdiction arguing that there was no proof he transported the
7  kidnapping victim over state lines from Oregon to Washington, and therefore, his guilty
8  plea cannot form the basis for federal subject matter jurisdiction. *United States v.*
9  *Mathews*, 833 F.2d 161, 163 (9th Cir. 1987), *abrogated on other grounds by Young v.*
10 *Holder*, 697 F.3d 976, 986 (9th Cir. 2012) (*en banc*).  The Ninth Circuit disagreed and
11 explained that by pleading guilty to the indictment, the defendant conclusively admitted
12 all factual allegations in the indictment, including those that form the predicate for federal
13 jurisdiction. *Id*. at 164.  Further because resolution of the claims would have "required an
14 evidentiary hearing to determine whether the alleged facts occurred as admitted in the
15 plea agreement", his claim was not a jurisdictional one subject to review despite a guilty
16 plea.  *Caperell,* 938 F.3d at 978 (citing *Mathews*, 833 F.2d at 163-64.)

17 Similarly, in this case, the information stated facts that the wire fraud involved an
18 interstate wire communication and that it occurred "within the Southern District of
19 California", (Dkt. No. 153), providing the Court with jurisdiction and venue.  Petitioner
20 admitted the facts to support venue and jurisdiction in the plea agreement and also at the
21 plea colloquy.  (Dkt. No. 238 at 3-4; Dkt. No. 242-1 at 17-18.)  By pleading guilty,
22 Petitioner conclusively established the facts underlying wire fraud jurisdiction and venue.
23 *See Mathews*, 833 F.2d at 164.  Further, an evidentiary hearing would be needed to
24 determine the factual bases for jurisdiction and venue; therefore, these are not
25 "jurisdictional" claims subject to review.  *See id.* (a guilty plea operates as conclusive

proof regarding the jurisdictional facts alleged in an indictment, and therefore a petitioner seeking collateral review cannot dispute those facts, through an evidentiary hearing or otherwise).

Additionally, while Article III of the Constitution, the Sixth Amendment, and Rule 18 of the Federal Rules of Criminal Procedure guarantee that a defendant will be tried in the state where the crime was committed, U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18, this "'constitutional venue' right, like other venue rights, can be waived." *United States v. Roberts*, 618 F.2d 530, 573 (9th Cir. 1980) (recognizing that courts confusingly "speak in terms of jurisdiction when they mean venue" but venue issues do not involve subject matter jurisdiction); *United States v. Young*, 2 No. 1:16-CR-02058-SMJ-1023 WL 2978911, at * 5 (E.D. Wash. Apr. 17, 2023) (venue can be waived either expressly or by inaction) (citing *Hanson v. United States,* 285 F.2d 27, 28 (9th Cir. 1960)); *United States v. Douglas*, 996 F. Supp. 969, 973-74 (N.D. Cal. 1998) (citing United States v. Evans, 62 F.3d 1233, 1236 (9th Cir. 1995)).

In this case, at the plea colloquy and in the plea agreement, Petitioner admitted that venue was proper in this district. (Dkt. No. 238 at 3-4; Dkt. No. 242-1 at 17-18.) Therefore, Petitioner waived any challenges to venue by pleading guilty. *See United States v. Obak*, 884 F.3d 934, 937 (9th Cir. 2018) (defendant waived any objection to defect in venue by pleading guilty recognizing that while venue may be grounded in the Constitution, similar to other venue rights, it can be waived).

In sum, the Court concludes that Petitioner has not demonstrated his claims fall under an exception to the general rule that a guilty plea waives any challenges arising from pre-plea deprivations of constitutional rights.

///

///

### 3.     Plea was Voluntary and Knowing

Ultimately, the plea agreement and plea colloquy demonstrate that Petitioner was fully aware of the constitutional rights he was waiving, aware that he was waiving his right to collaterally attack his sentence and conviction, and admitted the factual bases for the plea, including that venue and jurisdiction were proper in this district.

As part of the plea agreement, Petitioner waived his right to "collaterally attack every aspect of the conviction and sentence . . . [t]he only exceptions are 1) Defendant may appeal a custodial sentence above the high end of the guideline range recommended by the Government at sentencing . . .  and 2) Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel." (Dkt. No. 238-1 at 10.)  Petitioner does not challenge his conviction and sentence based on the two exceptions.

In the plea agreement, Petitioner admitted that "[o]n October 23, 2015, in the Southern District of California, in connection with seeking that pre-approval, [Petitioner] submitted by email to the mortgage broker, among other things, (1) a purported employment verification letter, and (2) a purported pay stub." (*Id.* at 3.)  Further, due to his efforts to obtain a mortgage through DLJ Financial, "on or about February 25, 2016, DLJ Financial caused a check to be run on [Petitioner's] credit, within the Southern District of California.  This credit check was an interstate wire communication reasonably foreseeable to [Petitioner]." (*Id.* at 3-4.)

In addition, during the plea colloquy, Petitioner was advised he was waiving his constitutional rights. (Dkt. No. 242-1 at 6, 9.)  The Court inquired of Petitioner's mental state confirming that he was not under the influence of any alcohol, medication or drugs and had not been treated for mental illness or addiction recently. (*Id.* at 8.)  Petitioner affirmed that he received a copy of the information and fully discussed the charges with

his attorney.  (*Id.* at 8.)  The elements of the charge were recited by the government and included the element that Petitioner "used or caused to be used interstate wire communication to carry out or attempt to carry out an essential part of the scheme." (*Id.* at 10.)  Petitioner also understood he was pleading guilty to all elements of wire fraud. (*Id.* at 10.)  He was also informed that the maximum penalty is 20 years in prison and a term of supervised release of no more than three years.  (*Id.* at 11.)  The factual bases for the plea were presented, including conduct "in the Southern District of California", and Petitioner and his counsel affirmed that the facts were true, established, accurate, and "can be established and [ ] voluntarily admitted" and the plea was "made freely and voluntarily with a full understanding of the consequences of the plea."  (*Id.* at 17-19.)

Further, the Court explained his waiver of appeal and collateral attacks and Petitioner affirmed that he understood.  (*Id.* at 15.)  The Court also asked defense counsel whether Petitioner understood the terms of the plea agreement to which counsel explained that he reviewed the plea agreement with Petitioner "at great length" and "oh yes, he does" understand the terms.  (*Id.* at 15-16.)  The Court confirmed that Petitioner's plea was made "knowingly, voluntarily, and with a full understanding of the consequences of the plea."  (*Id.* at 16.)  Finally, the Court found that Petitioner was fully competent, and capable of entering an informed plea, was aware of the nature of the charges and consequences of the plea and the guilty plea was knowing and voluntary. (*Id.* at 19.)

Therefore, the Court finds that the plea agreement is unambiguous and fully integrated and Petitioner's statements and responses during the plea colloquy were also clear and unambiguous, and he waived his right to collaterally attack his sentence and conviction. *See Jackson*, 21 F.4th at 1214; *Fox v. Johnson*, 832 F.3d 978, 989 (9th Cir. 2016) ("We therefore will 'generally enforce the plain language of a plea agreement if it

is clear and unambiguous on its face.'"); *Davies*, 856 F.3d at 1245 ("Because Davies voluntarily waived his right to bring this challenge through the collateral-attack waiver provision of his plea agreement, we affirm the denial of his habeas corpus petition.").

Accordingly, because Petitioner waived his right to file a collateral attack, this Court lacks jurisdiction to consider the remaining issues in his petition.[9] *See Washington*, 422 F.3d. at 871 (recognizing that if sentencing agreement's waiver of the right to file a federal habeas petition under 28 U.S.C. § 2254 was valid, district court lacked jurisdiction to hear the case); *United States v. Corbin*, 246 F.3d 676, at *1 (9th Cir. 2000) ("because [the defendant] waived his right to appeal in his plea agreement, we lack jurisdiction to review his sentence.").

## C.  Actual Innocence Gateway

As a last resort, Petitioner relies on *Schlup'*s actual innocence theory to overcome AEDPA's one year statute of limitations and the procedural bar from pleading guilty. (Dkt. No. 252 at 15-17.) He claims that the Court lacked jurisdiction to enter judgment making the underlying conduct not prohibited by law and making him factually innocent. (*Id.* at 16.) He also claims that because venue was not proper in the Southern District of California, the alleged conduct was not actionable by the government or this Court. (*Id.* at 16.) He additionally argues that because his plea was involuntary and unintelligent and there was a *Brady* violation, he cannot be held criminally responsible for acts over which

---

[9] Petitioner also argues that the government took advantage of his mental state having been incarcerated for 30 months by enticing him to a "very attractive" deal of dismissing the entire indictment with time served as long as he plead guilty to one unrelated wire fraud count. (Dkt. No. 242 at 13; Dkt. No. 247 at 7.) Petitioner appears to have "buyer's remorse" in pleading guilty which is not a basis for habeas relief. *See United States v. Goodall*, 21 F.4th 555, 562 (9th Cir. 2021) ("A plea agreement is no different in this respect from any other contract in which someone may have buyer's remorse after an unforeseen future event—the contract remains valid because the parties knowingly and voluntarily agreed to the terms. There is no do-over just because a defendant later regrets agreeing to a plea deal.").

1  he had no control and he did not have the necessary state of mind.  (*Id.* at 17-18.)
2  Finally, he alleges the illegal arrest, search and seizure violated his Fourth Amendment
3  rights and caused further violations and malicious prosecution of an innocent man based
4  on an affiant's false statements that mislead the Magistrate Judge.  (*Id.* at 19.)  These
5  allegations mirror the allegations raised above but under the theory of actual innocence.
6  Respondent argues that Petitioner has not shown that he is innocent of all the dismissed
7  charges as is required for a showing of actual innocence when a defendant has pleaded
8  guilty.  (Dkt. No. 238 at 8, 10.)

9        The actual innocence gateway articulated in in *Schlup v. Delo*, 513 U.S. 298
10  (1995), and further explained in *House v. Bell*, 547 U.S. 518 (2006) permits habeas
11  petitioners to overcome procedural bars to consider the merits of their petition, including
12  statute of limitations.  *Schlup v. Delo*, 513 U.S. 298, 313-15 (1995); *House v. Bell*, 547
13  U.S. 518, 536-38 (2006).  A claim of actual innocence under *Schlup* is "not itself a
14  constitutional claim, but instead a gateway through which a habeas petitioner must pass
15  to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513
16  U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).  To establish actual
17  innocence, petitioner "must show that it is more likely than not that no reasonable juror
18  would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.  In
19  the context of a guilty plea, a petitioner must show "that the constitutional error in his
20  plea colloquy has probably resulted in the conviction of one who is actually innocent."
21  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "In cases where the Government has
22  forgone more serious charges in the course of plea bargaining, petitioner's showing of
23  actual innocence must also extend to those charges." *Id.* at 624.  A petitioner must
24  "present[] evidence of innocence so strong that a court cannot have confidence in the
25  outcome of the trial unless the court is also satisfied that the trial was free of nonharmless

1  constitutional error." *Schlup*, 513 U.S. at 316.  The *Schlup* standard is "demanding" and reviewed only in the "extraordinary case".  *House*, 547 U.S. at 538.

In his petition, even though he acknowledges that an actual innocence claim requires "new evidence", (Dkt. No. 252 at 15), Petitioner fails to support any of his claims with any evidence, let alone new evidence.  Accordingly, he has failed to make any attempt to demonstrate actual innocence.  *See Bell v. Warden FCI Dublin*, No. 17-CV-07346-LHK, 2019 WL 1170780, at *10 (N.D. Cal. Mar. 13, 2019) (a petitioner who fails to produce any evidence of actual innocence does not invoke the jurisdiction of the federal courts.) (citation omitted).  Therefore, the Court DENIES the amended petition based on actual innocence.

**D.     Request for Evidentiary Hearing**

Petitioner seeks an evidentiary hearing to address the alleged invalid warrant and fruits of the poisonous tree and to review the wire transmission to address whether this court has jurisdiction over the conviction.  (Dkt. No. 250.)

The Court must hold an evidentiary hearing on the merits of a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. 28 U.S.C. § 2255(b).  However, a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Rodrigues-Vega,* 797 F.3d 781, 791 (9th Cir. 2015).  An evidentiary hearing is unnecessary if the allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (internal quotation marks omitted).  Conclusory statements in a Section 2255 motion are not enough to require an evidentiary hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980) (citing *Wagner v. United States*, 418 F.2d 618, 621 (9th Cir. 1969)).

1  Here, the existing records, which include the signed plea agreement and the official
2  transcripts of the change of plea and sentencing hearings show that Petitioner is not
3  entitled to relief.  Besides conclusory assertions, Petitioner has not provided any evidence
4  to demonstrate he is entitled to an evidentiary hearing.  Accordingly, the Court DENIES
5  Petitioner's request for an evidentiary hearing.

### E. Certificate of Appealability

To appeal a district court's denial of a § 2255 petition, a petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A).  A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2).  To satisfy this standard, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds that Petitioner has not made the necessary showing. Therefore, the Court finds that reasonable jurists would not find this Court's denial of Petitioner's claims debatable and the Court DENIES a certificate of appealability.

### Conclusion

Based on the reasoning above, the Court DENIES the amended petition for writ of habeas corpus under 28 U.S.C. § 2255, (Dkt. No. 247), GRANTS the motion to strike the original reply, (Dkt. No. 246), DENIES the request for evidentiary hearing, (Dkt. No. 250), and DENIES a certificate of appealability.

/ / /

/ / /

/ / /

/ / /

1  The Court also DENIES Petitioner's motion for summary judgment, (Dkt. No. 245), motion for appointment of counsel, (Dkt. No. 248), motion for discovery, (Dkt. No. 251), motion for oral argument, (Dkt. No. 254), and motion to submit discovery, (Dkt. No. 255) as MOOT.  The Clerk of Court shall enter judgment accordingly.

IT IS SO ORDERED.

Dated:  November 1, 2024

Hon. Gonzalo P. Curiel
United States District Judge